# United States Court of Appeals
## For the Eighth Circuit
_____

## No. 25-1146
_____

Fayetteville Public Library, a political subdivision in the City of Fayetteville, State of Arkansas; Eureka Springs Carnegie Public Library; Central Arkansas Library System; Nate Coulter; Olivia Farrell

*Plaintiffs - Appellees*

Hayden Kirby

*Plaintiff*

Leta Caplinger; Adam Webb; Arkansas Library Association; Advocates for All Arkansas Libraries; Pearl's Books, LLC; Wordsworth Community Bookstore, LLC, doing business as WordsWorth Books; American Booksellers Association; Association of American Publishers, Inc.; Authors Guild, Inc.; Comic Book Legal Defense Fund; Freedom to Read Foundation; Miel Partain, In her own capacity and as parent and next friend of M. Partain, by next friend M. Partain

*Plaintiffs - Appellees*

v.

Crawford County, Arkansas; Chris Keith, in his official capacity as the Crawford County Judge

*Defendant*s

Todd Murray, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; Sonia Eileen Fonticiella, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; Devon Holder, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; Matt Durrett, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; Jeff Phillips, each in his or her official capacity as a prosecuting attorney

Appellate Case: 25-1146    Page: 1    Date Filed: 07/30/2026 Entry ID: 5666723

for the State of Arkansas; Will Jones, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; Teresa Howell, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; Ben Hale, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; Connie Mitchell, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; Dan Turner, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; Jana Bradford, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; Frank Spain, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; Tim Blair, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; Kyle Hunter, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; Daniel Shue, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; Jeff Rogers, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; David Ethredge; Tom Tatum, II, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; Drew Smith, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; Rebecca Reed McCoy, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; Michelle Lawrence, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; Debra Buschman, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; Tony Rogers, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; Nathan Smith, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; Carol Crews, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; Kevin Holmes, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; Chris Walton, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; Chuck Graham, each in his or her official capacity as a prosecuting attorney for the State of Arkansas

*Defendants - Appellants*

Tim Griffin, In his official capacity as Attorney General of Arkansas

*Intervenor Defendant - Appellant*

------------------------------

-2-

Appellate Case: 25-1146    Page: 2    Date Filed: 07/30/2026 Entry ID: 5666723

Foundation for Individual Rights and Expression

*Amicus on Behalf of Appellee(s)*

_____

No. 25-2211

_____

Fayetteville Public Library, a political subdivision in the City of Fayetteville, State of Arkansas; Eureka Springs Carnegie Public Library; Central Arkansas Library System; Nate Coulter; Olivia Farrell

*Plaintiffs - Appellees*

Hayden Kirby

*Plaintiff*

Leta Caplinger; Adam Webb; Arkansas Library Association; Advocates for All Arkansas Libraries; Pearl's Books, LLC; Wordsworth Community Bookstore, LLC, doing business as WordsWorth Books; American Booksellers Association; Association of American Publishers, Inc.; Authors Guild, Inc.; Comic Book Legal Defense Fund; Freedom to Read Foundation; Miel Partain, In her own capacity and as parent and next friend of M. Partain, by next friend M. Partain

*Plaintiffs - Appellees*

v.

Crawford County, Arkansas; Chris Keith, in his official capacity as the Crawford County Judge

*Defendant*s

Todd Murray, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; Sonia Eileen Fonticiella, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; Devon Holder, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; Matt Durrett, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; Jeff Phillips, each in his or her official capacity as a prosecuting attorney

-3-

Appellate Case: 25-1146    Page: 3    Date Filed: 07/30/2026 Entry ID: 5666723

for the State of Arkansas; Will Jones, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; Teresa Howell, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; Ben Hale, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; Connie Mitchell, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; Dan Turner, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; Jana Bradford, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; Frank Spain, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; Tim Blair, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; Kyle Hunter, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; Daniel Shue, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; Jeff Rogers, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; David Ethredge; Tom Tatum, II, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; Drew Smith, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; Rebecca Reed McCoy, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; Michelle Lawrence, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; Debra Buschman, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; Tony Rogers, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; Nathan Smith, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; Carol Crews, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; Kevin Holmes, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; Chris Walton, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; Chuck Graham, each in his or her official capacity as a prosecuting attorney for the State of Arkansas

*Defendants - Appellants*

Tim Griffin, In his official capacity as Attorney General of Arkansas

Intervenor *Defendant - Appellant*

_____

No. 25-2427

_____

-4-

Fayetteville Public Library, a political subdivision in the City of Fayetteville, State of Arkansas; Eureka Springs Carnegie Public Library; Central Arkansas Library System; Nate Coulter; Olivia Farrell

*Plaintiffs - Appellees*

Hayden Kirby

*Plaintiff*

Leta Caplinger; Adam Webb; Arkansas Library Association; Advocates for All Arkansas Libraries; Pearl's Books, LLC; Wordsworth Community Bookstore, LLC, doing business as WordsWorth Books; American Booksellers Association; Association of American Publishers, Inc.; Authors Guild, Inc.; Comic Book Legal Defense Fund; Freedom to Read Foundation; Miel Partain, In her own capacity and as parent and next friend of M. Partain, by next friend M. Partain

*Plaintiffs - Appellees*

v.

Crawford County, Arkansas; Chris Keith, in his official capacity as the Crawford County Judge

*Defendants - Appellants*

Todd Murray, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; Sonia Eileen Fonticiella, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; Devon Holder, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; Matt Durrett, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; Jeff Phillips, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; Will Jones, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; Teresa Howell, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; Ben Hale, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; Connie Mitchell, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; Dan Turner, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; Jana Bradford, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; Frank

Appellate Case: 25-1146   Page: 5   Date Filed: 07/30/2026 Entry ID: 5666723

Spain, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; Tim Blair, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; Kyle Hunter, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; Daniel Shue, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; Jeff Rogers, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; David Ethredge; Tom Tatum, II, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; Drew Smith, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; Rebecca Reed McCoy, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; Michelle Lawrence, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; Debra Buschman, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; Tony Rogers, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; Nathan Smith, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; Carol Crews, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; Kevin Holmes, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; Chris Walton, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; Chuck Graham, each in his or her official capacity as a prosecuting attorney for the State of Arkansas

*Defendant*s

Tim Griffin, In his official capacity as Attorney General of Arkansas

Intervenor *Defendant*

_____

Appeal from United States District Court
for the Western District of Arkansas - Fayetteville

_____

Submitted: June 11, 2026
Filed: July 30, 2026

_____

Before COLLOTON, Chief Judge, ERICKSON and GRASZ, Circuit Judges.

_____

Appellate Case: 25-1146    Page: 6    Date Filed: 07/30/2026 Entry ID: 5666723

GRASZ, Circuit Judge.

The Arkansas General Assembly adopted Act 372 in 2023. As summarized by Arkansas's Attorney General, the law aims "[t]o protect children from obscenity and to increase accountability for public-library curation decisions." To this end, the law's first section makes it illegal to "furnish[] a harmful item to a minor . . . ." Ark. Code Ann. § 5-27-212(b). And its fifth section requires public libraries to adopt written policies addressing the "selection, relocation, and retention of physical materials" in their collections, as well as the procedures they will follow when people challenge items in their collections as inappropriate. *Id.* § 13-2-106(a)–(c). A group of plaintiffs filed overbreadth and void-for-vagueness challenges against §§ 1 and 5 before they took effect. The district court entered summary judgment in Plaintiffs' favor, permanently enjoined enforcement of both sections, and awarded attorney fees and costs. On Defendants' appeal, we reverse the district court's judgment. As a result, we vacate its permanent injunction and award of attorney fees and costs.

## I. Background

To "protect children from obscenity," Act 372's first section criminalizes "furnishing a harmful item to a minor . . . ." § 5-27-212(b). A person commits this offense "if, knowing the character of the item involved, the person knowingly . . . [f]urnishes, presents, provides, makes available, gives, lends, shows, advertises, or distributes to a minor an item that is harmful to minors." *Id.* § 5-27-212(b)(1). Section 1 defines "[h]armful to minors" as

> that quality of any description, exhibition, presentation, or representation, in whatever form, of nudity, sexual conduct, sexual excitement, or sadomasochistic abuse, when the material or performance, taken as a whole, has the following characteristics:
>
> > (A)   The average person eighteen (18) years of age or older applying contemporary community standards would find that the

Appellate Case: 25-1146   Page: 7   Date Filed: 07/30/2026 Entry ID: 5666723

material or performance has a predominant tendency to appeal to a prurient interest in sex to minors;

(B) The average person eighteen (18) years of age or older applying contemporary community standards would find that the material or performance depicts or describes nudity, sexual conduct, sexual excitement, or sadomasochistic abuse in a manner that is patently offensive to prevailing standards in the adult community with respect to what is suitable for minors; and

(C) The material or performance lacks serious literary, scientific, medical, artistic, or political value for minors.

*Id.* § 5-68-501(2), *cited in id.* § 5-27-212(a)(1). Arkansas can punish violations of § 1 with up to a year of imprisonment. *See id.* §§ 5-27-212(d), -4-401(b)(1).

To "increase accountability for public-library curation decisions," § 5 requires county and municipal libraries to adopt two written, publicly available policies. *See id.* § 13-2-106(a)–(b). The first policy must "establish guidelines for the selection, relocation, and retention of physical materials that are available to the public." *Id.* § 13-2-106(a). And the second policy must allow people who are "affected by the material" to "challenge the appropriateness of material available in the county or municipal library" and must lay out certain procedures the library will follow, "at a minimum," when someone lodges such a challenge. *Id.* § 13-2-106(b)–(c).

Before Act 372 became effective, a group of public libraries, bookstores, and their patrons sued Arkansas's 28 prosecuting attorneys, Crawford County, and Crawford County Judge Chris Keith. Plaintiffs allege that §§ 1 and 5 violate the First Amendment because they are overbroad and they violate the Fourteenth Amendment's Due Process Clause because they are void for vagueness. The district court agreed, so it granted Plaintiffs' motion for summary judgment, permanently enjoined Defendants from enforcing §§ 1 and 5, and awarded Plaintiffs nearly $450,000 in attorney fees and costs. Defendants appeal.

-8-

Appellate Case: 25-1146     Page: 8     Date Filed: 07/30/2026 Entry ID: 5666723

## II. Analysis

Defendants' appeal raises six issues: (1) whether Plaintiffs lack standing to challenge §§ 1 and 5; (2) whether Plaintiffs' challenges are ripe; (3) whether §§ 1 and 5 are overbroad, in violation of the First Amendment; (4) whether §§ 1 and 5 are void for vagueness, in violation of the Fourteenth Amendment's Due Process Clause; (5) whether the district court exceeded its authority when it entered the permanent injunction; and (6) whether the district court erred when it awarded Plaintiffs attorney fees and costs. We discuss each issue in turn.

## A. Standing

Defendants argue Plaintiffs lack standing to bring their overbreadth and vagueness challenges against §§ 1 and 5. "We review whether a party has standing de novo." *Dakotans for Health v. Noem*, 52 F.4th 381, 385 (8th Cir. 2022).

"Our authority under the Constitution is limited to resolving 'Cases' or 'Controversies.'" *Dep't of Educ. v. Brown*, 600 U.S. 551, 561 (2023) (quoting U.S. Const. art. III, § 2). "For a lawsuit to constitute a case within the meaning of Article III, the plaintiff must have standing to sue," meaning "they possess 'a "personal stake" in the dispute' and are not mere bystanders." *Diamond Alt. Energy, LLC v. EPA*, 606 U.S. 100, 110 (2025) (quoting *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 379 (2024)). When plaintiffs file a consolidated complaint, alleging the same claims against the same defendants, only one plaintiff needs standing for the case to proceed. *Biden v. Nebraska*, 600 U.S. 477, 489 (2023); *accord PETA v. Reynolds*, 173 F.4th 959, 965 (8th Cir. 2026). To show they have standing, a plaintiff needs to demonstrate they have suffered "(1) an injury in fact, (2) a causal relationship between the injury and the challenged conduct, and (3) that a favorable decision will likely redress the injury." *Animal Legal Def. Fund v. Vaught*, 8 F.4th 714, 718 (8th Cir. 2021).

Appellate Case: 25-1146    Page: 9    Date Filed: 07/30/2026 Entry ID: 5666723

"The first requirement, injury in fact," normally "requires the plaintiff to demonstrate an injury that is 'concrete,' 'particularized,' and 'actual or imminent, not speculative.'" *Diamond Alt. Energy*, 606 U.S. at 111 (quoting *All. for Hippocratic Med.*, 602 U.S. at 381). But this requirement is relaxed when plaintiffs bring pre-enforcement challenges under the First Amendment. *See, e.g.*, *PETA*, 173 F.4th at 964. Plaintiffs can demonstrate an injury in fact, in this context, by showing "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)).

"The second and third requirements, causation and redressability, are usually 'flip sides of the same coin.'" *Diamond Alt. Energy*, 606 U.S. at 111 (quoting *All. for Hippocratic Med.*, 602 U.S. at 380). "Causation requires the plaintiff to show 'that the injury was likely caused by the defendant,' and redressability requires the plaintiff to demonstrate 'that the injury would likely be redressed by judicial relief.'" *Id.* (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)). "If a defendant's action causes an injury, enjoining the action . . . will typically redress that injury." *Id.* (quoting *All. for Hippocratic Med.*, 602 U.S. at 381).

### i. Section 1

Defendants all but concede that "a few [p]laintiffs have standing to challenge" § 1. We agree that the librarian and bookstore plaintiffs have standing to challenge this section.

In *Virginia v. American Booksellers Ass'n*, the Supreme Court held that a group of booksellers had standing to seek pre-enforcement review of a Virginia law making it a crime "to knowingly display for commercial purpose" material that "is harmful to juveniles." 484 U.S. 383, 386, 392 (1988) (quoting Va. Code § 18.2-391(a)); *see also Susan B. Anthony List*, 573 U.S. at 160. In reaching this conclusion, the Court explained the injury-in-fact requirement was met because the Virginia law

-10-

Appellate Case: 25-1146     Page: 10     Date Filed: 07/30/2026 Entry ID: 5666723

was "aimed directly at plaintiffs, who . . . w[ould] have to take significant and costly compliance measures or risk criminal prosecution." *Am. Booksellers*, 484 U.S. at 392. The Court further explained that the plaintiffs had also "alleged an actual and well-founded fear that the law w[ould] be enforced against them," *id.* at 393, which was sufficient to satisfy the causation and redressability requirements because the defendants were responsible for enforcing the statute and could be enjoined from doing so. *See, e.g.*, *PETA*, 173 F.4th at 965. The librarian and bookstore plaintiffs here have standing to challenge § 1 for much the same reasons.

First, they have suffered an injury in fact because § 1 is aimed at them, and they must choose between removing books from their shelves, taking compliance measures they attest would be costly, or risking criminal prosecution. *See Am. Booksellers*, 484 U.S. at 392. The librarian and bookstore plaintiffs filed several affidavits, attesting they have dozens of books on their shelves that are likely covered by the statute and claiming they may have to spend large sums of money reviewing their collections and restructuring their facilities to comply with § 1. *See Susan B. Anthony List*, 573 U.S. at 160 (explaining the *American Booksellers* plaintiffs showed they suffered an injury in fact by "introduc[ing] 16 books they believed were covered by the statute and testif[ying] that costly compliance measures would be necessary to avoid prosecution for displaying such books"). Without these measures, the librarian and bookstore plaintiffs attest they fear being prosecuted under § 1 and imprisoned for up to a year, and these fears are "well-founded." *Am. Booksellers*, 484 U.S. at 393. Arkansas "has not suggested that the . . . law will not be enforced, and we see no reason to assume otherwise." *Id.* Second, the librarian and bookstore plaintiffs' injuries are "causally attributable" to the prosecutor defendants, "since they were tasked with enforcing [§ 1]." *PETA*, 173 F.4th at 965. And third, we can redress their injury "by enjoining" the prosecutor defendants "from enforcing the statute." *Id.*

The librarian and bookstore plaintiffs therefore have standing to challenge § 1. As a result, "we need not consider whether the other . . . plaintiffs have standing" to challenge this section. *Horne v. Flores*, 557 U.S. 433, 446–47 (2009) (quoting

-11-

*Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264 n.9 (1977)).

### ii.  Section 5

Plaintiffs argue three library patron plaintiffs have standing to challenge § 5 because they "will likely be injured" when Crawford County and County Judge Keith implement and enforce the law.  We disagree.

As detailed above, § 5 requires public libraries to adopt two written policies. The first policy must "establish guidelines for the selection, relocation, and retention of physical materials" in the library's collection.  § 13-2-106(a).  And the second policy must allow patrons to "challenge the appropriateness of material available in the . . . library," and lay out the procedure the library will follow when "addressing challenged material . . . ."  *Id.* § 13-2-106(b)–(c).  Simply requiring libraries to adopt these policies — which is all § 5 mandates — does not injure Plaintiffs.  *See In re Navy Chaplaincy*, 697 F.3d 1171, 1176 (D.C. Cir. 2012) (noting standing is "lacking where plaintiffs claimed future injury based on speculation about alleged discriminatory practices unconnected to concrete policies"); *Commw. Edison Co. v. Train*, 649 F.2d 481, 484 (7th Cir. 1980) ("[T]he regulation . . . requires the states to adopt and implement a policy which may or may not result in a coercive order . . . in the future.  It is impossible to determine at this point with any degree of certainty whether the utilities will be injured by future action by the states." (footnote omitted)).

Plaintiffs contend they will be injured when libraries "segregat[e] books into adults-only spaces" to comply with § 5.  But nothing in § 5's text requires libraries to do this.  Rather, Plaintiffs are speculating libraries *might* decide to segregate certain books as part of their curation policies, which they have not yet adopted, or in response to challenges, which have not yet been filed.  The Supreme Court has warned us not to "endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment."  *Clapper v. Amnesty Int'l*

-12-

Appellate Case: 25-1146     Page: 12     Date Filed: 07/30/2026 Entry ID: 5666723

*USA*, 568 U.S. 398, 413 (2013). This is plainly the case here. We cannot know at this stage what curation decisions libraries will make, what challenges will be filed, or how libraries will resolve them. *See Whitmore v. Arkansas*, 495 U.S. 149, 159–60 (1990) ("It is just not possible for a litigant to prove in advance that the judicial system will lead to any particular result in his case."). Plaintiffs' "[a]llegations of *possible* future injury" are consequently "not sufficient" to satisfy the injury-in-fact requirement. *Clapper*, 568 U.S. at 409 (alteration in original) (quoting *Whitmore*, 495 U.S. at 158).

Our recent decision in *L.H. v. Independence School District*, 111 F.4th 886 (8th Cir. 2024), is instructive on this point. There, "[f]our parents of students attending schools within the Independence School District . . . filed suit on behalf of their minor children to challenge the District's policy that removes material in school libraries upon receipt of a challenge to that material, pending a formal review process." *Id.* at 888. The parents argued their children "[we]re injured by the District's automatic-removal policy because it 'imminently threaten[ed]' their First Amendment right to access library materials . . . ." *Id.* at 892. We rejected this argument because, "for the automatic-removal policy to affect the children's conduct[,] . . . 'a hypothetical, future challenge, in which a book is automatically removed pending review' must occur." *Id.* at 894. And the parents did not show "any challenge [wa]s currently pending," "that any such challenge ha[d] been threatened by a potential challenger," or "that any book [wa]s currently temporarily removed as a result of the enforcement of the policy." *Id.* The same is true here. In fact, because the district court enjoined § 5 before it took effect, the libraries have not adopted the policies it requires, much less segregated or removed any books in response to challenges.

Plaintiffs try to get around *L.H.* by pointing to a previous policy the Crawford County Library System adopted requiring "its library branches [to] remove from their children's sections all books containing LGBTQ themes, affix a prominent color label to those books, and place them in a newly-created section called the 'social section.'" *Virden v. Crawford County*, No. 2:23-CV-2071, 2024 WL

-13-

Appellate Case: 25-1146     Page: 13     Date Filed: 07/30/2026 Entry ID: 5666723

4360495, at *1 (W.D. Ark. Sep. 30, 2024). In their view, even though the prior policy was permanently enjoined nearly two years ago, *see id.* at *5, we can infer Crawford County "would likely restrict minors' access to unpopular opinions again if permitted by [§] 5," based on the prior policy. While the past may be relevant "insofar as it is a launching pad for a showing of imminent future injury," *Murthy v. Missouri*, 603 U.S. 43, 59 (2024), there is nothing in the record, aside from Plaintiffs' *ipse dixit*, indicating Crawford County or County Judge Keith will use § 5 to resurrect the prior policy. *See Tara Enters., Inc. v. Humble*, 622 F.2d 400, 401–02 (8th Cir. 1980) ("To obtain injunctive or declaratory relief against these officials, it is well established that there must be some indication that they intend to continue the unconstitutional practices alleged in the complaint.").

For these reasons, Plaintiffs have not satisfied standing's injury-in-fact requirement with respect to § 5.[1]

## B. Ripeness

Defendants argued Plaintiffs' challenges to § 1 were not ripe when they moved for summary judgment. Except for one sentence in their "Summary of the Argument," however, they do not raise this on appeal. Nonetheless, ripeness "can never be waived or forfeited," *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012), because it goes to subject matter jurisdiction. *Dakota, Minn. & E.R.R. Corp. v. South Dakota*, 362 F.3d 512, 520 (8th Cir. 2004). We therefore review this issue de novo. *See Missouri v. Yellen*, 39 F.4th 1063, 1067 (8th Cir. 2022).

Ripeness, like standing, stems from Article III's requirement that federal courts can only resolve cases or controversies. *See PETA*, 173 F.4th at 965 ("The case-or-controversy requirement demands that a plaintiff show his claims are ripe."). Whether a claim is ripe has a "twofold aspect, requiring us to evaluate both the

---

[1]Although our standing analysis "focuses on [P]laintiffs' First Amendment claims, it applies with equal force to [their] Fourteenth Amendment vagueness claim[s]." *Woodlands Pride, Inc. v. Paxton*, 168 F.4th 293, 301 n.5 (5th Cir. 2026).

Appellate Case: 25-1146   Page: 14   Date Filed: 07/30/2026 Entry ID: 5666723

fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 148–49 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977). Ripeness "is designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements . . . .'" *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 732–33 (1998) (quoting *Abbott Lab'ys*, 387 U.S. at 148).

The ripeness requirement is satisfied "when a party brings a pre-enforcement challenge to a statute that both provides for criminal penalties and abridges First Amendment rights," so long as the plaintiff alleges "'a credible threat of present or future prosecution,'" since this threat "'*itself works an injury* . . . .'" *PETA*, 173 F.4th at 965 (quoting *Minn. Citizens Concerned for Life v. FEC*, 113 F.3d 129, 131 (8th Cir. 1997)); *accord Ohio C.R. Comm'n v. Dayton Christian Schs., Inc.*, 477 U.S. 619, 625 n.1 (1986) ("[A] reasonable threat of prosecution for conduct allegedly protected by the Constitution gives rise to a sufficiently ripe controversy."). As we explained above, the librarian and bookstore plaintiffs have shown a well-founded fear of prosecution under § 1, which allegedly abridges their First Amendment rights and carries up to a year of imprisonment. So Plaintiffs' challenges to § 1 are ripe.

## C. Overbreadth

Defendants argue the district court erred when it granted Plaintiffs summary judgment on their overbreadth challenge to § 1. Reviewing this issue de novo, *Farver v. McCarthy*, 931 F.3d 808, 811 (8th Cir. 2019), we agree.

An overbreadth challenge is a special "type of facial challenge traditionally restricted to the First Amendment context." *United States v. Richardson*, 175 F.4th 1012, 1013 (8th Cir. 2026). To win an ordinary facial challenge, a plaintiff "must establish that no set of circumstances exists under which [a statute] would be valid." *United States v. Evans*, 175 F.4th 950, 954 (8th Cir. 2026) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). But the standard for overbreadth challenges is

-15-

Appellate Case: 25-1146     Page: 15     Date Filed: 07/30/2026 Entry ID: 5666723

more lenient. *See Virginia v. Hicks*, 539 U.S. 113, 118 (2003). A plaintiff's "showing that a law punishes a substantial amount of protected free speech, judged in relation to the statute's plainly legitimate sweep, suffices to invalidate *all* enforcement of that law . . . ." *Id.* at 118–19 (cleaned up).

This standard aims to balance "competing social costs." *United States v. Williams*, 553 U.S. 285, 292 (2008). On "one hand, the threat of enforcement of an overbroad law deters people from engaging in constitutionally protected speech, inhibiting the free exchange of ideas." *Id.* But "[o]n the other hand, invalidating a law that in some of its applications is perfectly constitutional — particularly a law directed at conduct so antisocial that it has been made criminal — has obvious harmful effects." *Id.* To strike the right balance, the Supreme Court has "vigorously enforced the requirement that a statute's overbreadth be *substantial*, not only in an absolute sense, but also relative to [its] plainly legitimate sweep." *Id.* And it has repeatedly warned that "[i]nvalidation for overbreadth is 'strong medicine' that is not to be 'casually employed.'" *Id.* at 293 (quoting *L.A. Police Dep't v. United Reporting Publ'g Corp.*, 528 U.S. 32, 39 (1999)); *see also United States v. Hansen*, 599 U.S. 762, 770 (2023) ("To justify facial invalidation, a law's unconstitutional applications must be realistic, not fanciful, and their number must be substantially disproportionate to the statute's lawful sweep. In the absence of a lopsided ratio, courts must handle unconstitutional applications as they usually do — case-by-case." (citations omitted)).

The district court's overbreadth analysis is patently deficient, as it never attempted to determine § 1's "full set of applications, evaluate which are constitutional and which are not, and compare the one to the other." *Moody v. NetChoice, LLC*, 603 U.S. 707, 718 (2024); *accord GLBT Youth in Iowa Schs. Task Force v. Reynolds*, 114 F.4th 660, 669–70 (8th Cir. 2024). Instead, it bypassed the required inquiry entirely, electing to give three different reasons why, in its view, § 1 is overbroad.

-16-

Appellate Case: 25-1146     Page: 16     Date Filed: 07/30/2026 Entry ID: 5666723

First, the district court construed *American Booksellers* to leave "no doubt that [§] 1 is overbroad . . . ." In that case, the Supreme Court certified questions to the Virginia Supreme Court seeking its "authoritative construction" of a similar Virginia statute because "the nature and substance of plaintiffs' [overbreadth] challenge [could be] drastically altered," depending on how the statute was read. *Am. Booksellers*, 484 U.S. at 386, 395, 398. In explaining its decision, the Court forecasted that a "broader reading of the statute would raise correspondingly greater First Amendment questions." *Id.* at 395. But it did not resolve whether any particular reading would render the statute overbroad. To the contrary, the Court expressly concluded, "[W]e should not attempt to decide the constitutional issues presented without first having the Virginia Supreme Court's interpretation of . . . the statute." *Id.* at 393.

To be sure, the Arkansas Supreme Court has interpreted § 1's definition of "'harmful to minors'" broadly, holding it cannot be read to cover only materials that are harmful to *every* minor, since this construction would "*not* protect *all* minors" from "material that may actually be 'harmful' to them . . . ." *Shipley, Inc. v. Long*, 195 S.W.3d 911, 915, 917 (Ark. 2004) (quoting § 5-68-501(2)). And § 1 no doubt raises "greater First Amendment questions" because of this broad interpretation. *Am. Booksellers*, 484 U.S. at 395; *accord United States v. Yung*, 37 F.4th 70, 77 (3d Cir. 2022) ("The more speech a law punishes, the likelier it is to be overbroad."). Not every broad statute, however, is unconstitutionally *over*broad. *See United States v. Arthur*, 582 F.3d 713, 720 (7th Cir. 2009) ("[T]he statute is not overbroad; it simply has a broad scope."). So courts must use the framework set forth by the Supreme Court in *NetChoice* to distinguish statutes that are merely broad from those that are overbroad. *See GLBT Youth*, 114 F.4th at 669–70.

Second, the district court speculated that some libraries and bookstores may try to comply with § 1 by "creating strict adults-only areas — into which would go potentially hundreds of books, from disposable paperback romance novels to classics of literature like *Romeo and Juliet*, *Ulysses*, *Catcher in the Rye*, *The Handmaid's Tale*, or *The Kite Runner*." But courts cannot conjure up their own

-17-

Appellate Case: 25-1146    Page: 17    Date Filed: 07/30/2026 Entry ID: 5666723

hypotheticals en route to striking down laws as overbroad.  *See Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1157 (8th Cir. 2014) ("[T]he fact one can conceive of an impermissible application of a statute is not sufficient to render it susceptible to an overbreadth challenge.").  Rather, they must "perform the necessary inquiry set forth in *NetChoice*," *GLBT Youth*, 114 F.4th at 670, which turns on the plaintiff's actual evidentiary record.  *See N.Y. State Club Ass'n v. City of New York*, 487 U.S. 1, 14 (1988) (holding plaintiffs must "demonstrate from the text of [the law] and from actual fact that a substantial number of instances exist in which the [l]aw cannot be applied constitutionally" to prevail on overbreadth challenges).

And third, the district court stated in the conclusion to its order that "there is no set of circumstances under which [§] 1 . . . would be valid."  If § 1 had no constitutional applications, it would of course be overbroad.  *See Hansen*, 599 U.S. at 770.  But because the district court did not determine § 1's "full set of applications," *NetChoice*, 603 U.S. at 718, it was in no position to say § 1 can never be applied without violating the Constitution.  To the contrary, the Arkansas Supreme Court has recognized that books containing "graphic depictions of sexual conduct" and "nudity" are widely available.  *Shipley*, 195 S.W.3d at 917 n.3.  The First Amendment does not leave Arkansas powerless to keep some of these out of children's hands.  *See Free Speech Coal., Inc. v. Paxton*, 606 U.S. 461, 474 (2025) ("Two basic principles govern legislation aimed at shielding children from sexually explicit content.  A state may not prohibit adults from accessing content that is obscene only to minors.  But[] it may enact laws to prevent minors from accessing such content." (cleaned up)).  Section 1 therefore has a plainly legitimate sweep.

Since none of the reasons the district court gave for why § 1 is overbroad are a substitute for the analysis *NetChoice* requires, we must decide how to proceed. "Ordinarily, when a district court has used an improper legal standard in making a determination, we . . . remand . . . to permit a decision under the appropriate standard."  *Liddell ex rel. Liddell v. Bd. of Educ.*, 967 F.2d 1241, 1244 (8th Cir. 1992).  "In this case, however, we think it clear that if the appropriate standard is

Appellate Case: 25-1146     Page: 18     Date Filed: 07/30/2026 Entry ID: 5666723

applied," Plaintiffs' overbreadth challenge will fail for two reasons. *Id.* So we resolve the issue now.

First, we have held "[i]t is inappropriate to entertain a facial overbreadth challenge when the plaintiff fails to adduce any evidence that third parties will be affected in any manner differently from herself." *Josephine Havlak Photographer, Inc. v. Village of Twin Oaks*, 864 F.3d 905, 912 (8th Cir. 2017); *accord Pleasureland Museum, Inc. v. Beutter*, 288 F.3d 988, 996 (7th Cir. 2002) ("For a facial overbreadth challenge to be successful, plaintiffs must establish 'a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court.'" (quoting *Members of the City Council v. Taxpayers for Vincent*, 466 U.S. 789, 801 (1984))). This requirement "stems from the underlying justification for the overbreadth exception itself — the interest in preventing an invalid statute from inhibiting the speech of third parties . . . ." *Taxpayers for Vincent*, 466 U.S. at 800. Plaintiffs did not "adduce any evidence" in this case "that third parties will be affected in any manner differently from [themselves]." *Josephine Havlak*, 864 F.3d at 912. Their overbreadth challenge fails as a result.

Second, even disregarding the third-party issue and assuming some applications of § 1 violate the First Amendment, Plaintiffs' overbreadth challenge fails because we cannot determine § 1's "full set of applications" from the evidentiary record they put forward. *NetChoice*, 603 U.S. at 718. Consequently, we cannot "evaluate which [applications] are constitutional and which are not, and compare the one to the other." *Id.*; *see also Sisney v. Kaemingk*, 15 F.4th 1181, 1204 (8th Cir. 2021) (Stras, J., concurring in part and dissenting in part) ("[E]ven if he proved that the prison's policy prevents access to some materials that the First Amendment protects, the record does not establish how prevalent those materials are, much less how they compare to the quantity of materials that the prison can constitutionally withhold."). When "[n]o record [i]s made in this respect," courts "cannot conclude that the [l]aw is substantially overbroad and must assume that 'whatever overbreadth may exist should be cured through case-by-case analysis of

Appellate Case: 25-1146     Page: 19     Date Filed: 07/30/2026 Entry ID: 5666723

the fact situations to which its sanctions, assertedly, may not be applied.'" *N.Y. State Club Ass'n*, 487 U.S. at 14 (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 615–16 (1973)); *accord Ashcroft v. ACLU*, 535 U.S. 564, 584 n.16 (2002).

For these reasons, the district court erred when it granted Plaintiffs summary judgment on their overbreadth challenge to § 1.

### D. Vagueness

Defendants contend the district court should not have granted Plaintiffs summary judgment on their void-for-vagueness challenge to § 1. We review this issue de novo, *Farver*, 931 F.3d at 811, and we agree.

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). Statutes must "provide adequate notice of the proscribed conduct" and avoid "lend[ing] [themselves] to arbitrary enforcement" to survive vagueness challenges. *Nygard v. City of Orono*, 39 F.4th 514, 519 (8th Cir. 2022) (quoting *United States v. Barraza*, 576 F.3d 798, 806 (8th Cir. 2009)). "The degree of vagueness that the Constitution tolerates — as well as the relative importance of fair notice and fair enforcement — depends in part on the nature of the enactment." *Village of Hoffman Estates v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 498 (1982). When "the law interferes with the right of free speech . . . , a more stringent vagueness test should apply." *Id.* at 499. Still, "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Williams*, 553 U.S. at 304 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989)). Rather, even in this context, a statute is only void for vagueness if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Holder v. Humanitarian L. Project*, 561 U.S. 1, 18 (2010) (quoting *Williams*, 553 U.S. at 304).

Appellate Case: 25-1146     Page: 20     Date Filed: 07/30/2026 Entry ID: 5666723

The district court decided § 1 was void for vagueness because its "use of 'present,' 'make[] available,' and 'show' leaves librarians and booksellers unsure about whether shelving books they know contain sexual content may subject them to criminal liability." We disagree. A person violates § 1 "if, knowing the character of the item involved," they "knowingly . . . furnish[], present[], provide[], make[] available, give[], lend[], show[], advertise[], or distribute[] to a minor an item that is harmful to minors." § 5-27-212(b)(1). As the district court pointed out, § 1 does not define these verbs. But it does not follow that § 1 is void for vagueness, *see United States v. Baxter*, 127 F.4th 1087, 1091–92 (8th Cir. 2025) (rejecting a vagueness challenge based on an undefined term), especially since these words "are commonly used and understood." *Minn. Chapter of Associated Builders & Contractors, Inc. v. Blissenbach*, 155 F.4th 1015, 1022 (8th Cir. 2025).

To give some examples, it is well understood that: "furnish" means "[t]o provide or supply *with* (something necessary, useful, or desirable, either material or immaterial)," *Furnish* (*v.*), Oxford Eng. Dictionary (June 2026), https://doi.org/10.1093/OED/5667964040; "present" means "[t]o offer or make accessible (a book or literary work) to readers," *Present* (*v.*), Oxford Eng. Dictionary (June 2026), https://doi.org/10.1093/OED/1585603392; "provide" means "[t]o supply (something) for use," *Provide* (*v.*), Oxford Eng. Dictionary (June 2026), https://doi.org/10.1093/OED/1098236799; "give" means "[t]o allow a person or thing to have or take," *Give* (*v.*), Oxford Eng. Dictionary (Dec. 2024), https://doi.org/10.1093/OED/7886245844; and "lend" means "[t]o grant the temporary possession of (a thing) on condition or in expectation of the return of the same or its equivalent," *Lend* (*v.2*), Oxford Eng. Dictionary (June 2026), https://doi.org/10.1093/OED/1777946485. Given these common meanings of § 1's terms, Plaintiffs obviously fall within the statute's ambit when they shelve, check out, and sell books. *See Shipley*, 195 S.W.3d at 918.

"It will always be true that the fertile legal 'imagination can conjure up hypothetical cases in which the meaning of (disputed) terms will be in nice question.'" *Grayned*, 408 U.S. at 110 n.15 (quoting *Am. Comms. Ass'n v. Douds*,

-21-

Appellate Case: 25-1146    Page: 21    Date Filed: 07/30/2026 Entry ID: 5666723

339 U.S. 382, 412 (1950)).  We are confident, however, that § 1's dual scienter requirements — which limit its application to situations when a person knowingly furnishes an item to a minor knowing of the item's harmful character — lessen any vagueness concerns it might have otherwise posed.  *See McFadden v. United States*, 576 U.S. 186, 197 (2015) ("A scienter requirement in a statute alleviates vagueness concerns, narrows the scope of its prohibition, and limits prosecutorial discretion." (cleaned up)).  And this notwithstanding, "[a] plaintiff who engages in some conduct that is clearly proscribed," as is plainly the case here, "cannot complain of the vagueness of the law as applied to the conduct of others."  *Village of Hoffman Estates*, 455 U.S. at 495.

The district court consequently erred when it granted Plaintiffs summary judgment on their void-for-vagueness challenge to § 1.

### III.  Conclusion

Plaintiffs lack standing to challenge § 5, and their challenges to § 1 fail on their merits.  We therefore reverse the district court's judgment and, as a result, vacate its permanent injunction and award of attorney fees and costs.[2]

COLLOTON, Chief Judge, concurring in the judgment.

In my view, the plaintiffs lack standing to challenge § 5 of Act 372, and § 1 of the Act is not unconstitutionally vague.  I concur in those conclusions substantially for the reasons given by the court.

---

[2]Defendants also argue the district court exceeded its authority when it entered the permanent injunction and erred for several reasons when it awarded Plaintiffs almost $450,000 in attorney fees and costs.  We do not address these arguments, however, because Plaintiffs are not entitled to any injunctive relief, attorney fees, or costs, since their challenges all fail.  *See, e.g.*, *Ark. United v. Thurston*, 146 F.4th 673, 679 (8th Cir. 2025).

Appellate Case: 25-1146    Page: 22    Date Filed: 07/30/2026 Entry ID: 5666723

The court's discussion of the overbreadth challenge to § 1 under the First Amendment is harder to follow. The court says that there is no evidence that third parties will be affected differently than the libraries and booksellers who brought this action. But the libraries presented evidence that the Act would require them to segregate dozens of books in a way that would affect the manner in which third-party patrons may access the books for review and checkout. The plaintiffs presented lists of books that must be segregated under the statute because they would be "harmful" to the youngest minors while not "harmful" to older minors or obscene to adults.

The court then says that there is "no record" concerning the "full set of applications" of Act 372 to which the court could compare the restrictions on access. The relevant comparator, however, is the statute's plainly legitimate sweep. There is no evidence or suggestion that the collections include a significant number of holdings that would be obscene to adults, older teenagers, and younger minors alike. The challenged applications of the statute to books that are harmful to younger minors are thus substantial when judged in relation to the statute's plainly legitimate sweep. If adults and older teenagers have a right to unfettered and undifferentiated access to all books in a library, then a conclusion of overbreadth seems to follow. *See Shipley, Inc. v. Long*, 454 F. Supp. 2d 819, 831 (E.D. Ark. 2004). It would be surprising if the discussion of an overbreadth challenge in *Moody v. NetChoice, LLC*, 603 U.S. 707 (2024), required libraries in this sort of case to itemize their entire catalogs for the court.

Even so, for reasons already explained at length by others, I conclude that the overbreadth claim fails because third-party library patrons have no constitutional right to receive unfettered access to books of their choice at taxpayer expense. *Little v. Llano County*, 138 F.4th 834, 842-48 (5th Cir. 2025) (en banc); *see Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853, 888-89 (1982) (Burger, C.J., dissenting); *id*. at 915 (Rehnquist, J., dissenting). A public library, or a State that regulates a public library, may place certain books in a particular section of the facility, to shield younger minors from harm, without violating the First

-23-

Amendment rights of other patrons who would prefer to have the collection made available in a different manner.  Because the applications of § 1 posited by the plaintiff libraries do not in my view infringe on a constitutional right of third-party patrons, the statute is not unconstitutionally overbroad on its face.

_____

Appellate Case: 25-1146    Page: 24    Date Filed: 07/30/2026 Entry ID: 5666723