**No. 25-1146**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE EIGHTH CIRCUIT**

---

FAYETTEVILLE PUBLIC LIBRARY, a political subdivision in the City of Fayetteville, State of Arkansas; EUREKA SPRINGS CARNEGIE PUBLIC LIBRARY; CENTRAL ARKANSAS LIBRARY SYSTEM; NATE COULTER; OLIVIA FARRELL,

*Plaintiffs-Appellees*,

HAYDEN KIRBY,

*Plaintiff*,

LETA CAPLINGER; ADAM WEBB; ARKANSAS LIBRARY ASSOCIATION; ADVOCATES FOR ALL ARKANSAS LIBRARIES; PEARL'S BOOKS, LLC; WORDSWORTH COMMUNITY BOOKSTORE, LLC, doing business as WordsWorth Books; AMERICAN BOOKSELLERS ASSOCIATION; ASSOCIATION OF AMERICAN PUBLISHERS, INC.; AUTHORS GUILD, INC.; COMIC BOOK LEGAL DEFENSE FUND; FREEDOM TO READ FOUNDATION; MIEL PARTAIN, in her own capacity and as parent and next friend of M. Partain, by next friend M. Partain,

*Plaintiffs-Appellees*

v.

CRAWFORD COUNTY, ARKANSAS; CHRIS KEITH, in his official capacity as the Crawford County Judge,

*Defendants*,

TODD MURRAY, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; SONIA EILEEN FONTICELLA, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; DEVON HOLDER, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; MATT DURRETT, each in his or her official capacity as a prosecuting attorney for the State



Appellate Case: 25-1146 Page: 1 Date Filed: 08/27/2026 Entry ID: 5677326

of Arkansas; JEFF PHILLIPS, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; WILL JONES, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; TERESA HOWELL, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; BEN HALE, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; CONNIE MITCHELL, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; DAN TURNER, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; JANA BRADFORD, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; FRANK SPAIN, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; TIM BLAIR, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; KYLE HUNTER, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; DANIEL SHUE, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; JEFF ROGERS, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; DAVID ETHREDGE, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; TOM TATUM, II, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; DREW SMITH, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; REBECCA REED MCCOY, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; MICHELLE LAWRENCE, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; DEBRA BUSCHMAN, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; TONY ROGERS, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; NATHAN SMITH, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; CAROL CREWS, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; KEVIN HOLMES, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; CHRIS WALTON, each in his or her official capacity as a prosecuting attorney for the State of Arkansas; CHUCK GRAHAM, each in his or her official capacity as a prosecuting attorney for the State of Arkansas,

*Defendants-Appellants*,

TIM GRIFFIN, in his official capacity as Attorney General of Arkansas,

*Intervenor Defendant-Appellant*.

On Appeal from the United States District Court
for the Western District of Arkansas
Case No. 5:23-cv-05086 (Hon. J. Timothy L. Brooks)

**PLAINTIFFS-APPELLEES' PETITION FOR PANEL REHEARING**

Respectfully submitted,


*/s/ John T. Adams*
John T. Adams
Attorney for Central Arkansas Library System, Nate Coulter, and the Eureka Springs Carnegie Public Library
JAMES & CARTER, P.L.C.
100 River Bluff Drive, Suite 420
Little Rock, AR 72202
(501) 372-1414
jadams@jamescarterlaw.com

Vincent O. Chadick
Brandon B. Cate
Glenn V. Larkin
Attorneys for Fayetteville Public Library
QUATTLEBAUM, GROOMS & TULL PLLC
4100 Corporate Center Drive, Suite 310
Springdale, Arkansas 72762
Telephone: (479) 444-5200
bcate@qgtlaw.com
vchadick@qgtlaw.com
glarkin@qgtlaw.com

Bettina Brownstein
BETTINA E. BROWNSTEIN LAW FIRM
John C. Williams
ARK. CIVIL LIBERTIES UNION FDN.
Attorneys for Leta Caplinger, Olivia Farrell, Miel Partain, and Madeline Partain
904 West 2nd Street, Suite 2
Little Rock, AR 72201
(501) 920-1764
bettinabrownstein@gmail.com
john@acluarkansas.org
On Behalf of the Arkansas Civil Liberties Union Foundation, Inc.

Victoria S. Nugent
Jeff B. Dubner
Orlando Economos
Will Bardwell
Aman George
Attorneys for the Arkansas Library Association, Advocates for All Arkansas Libraries, and Adam Webb, in his individual capacity
DEMOCRACY FORWARD FDN.
P.O. Box 34554
Washington, DC 20043
(202) 448-9090
vnugent@democracyforward.org
oeconomos@democracyforward.org
wbardwell@democracyforward.org
ageorge@democracyforward.org

Rebecca Hughes Parker
Harrison Rosenthal
Attorneys for Pearl's Books, LLC, Wordsworth Community Bookstore LLC, American Booksellers Association, Association of American Publishers, Inc., Authors Guild, Inc. Comic Book Legal Defense Fund, and Freedom to Read Foundation
DENTONS US LLP
1221 Avenue of the Americas
New York, NY 10020
(212) 768-6700
rebeccahughes.parker@dentons.com
harrison.rosenthal@dentons.com

Plaintiffs respectfully request that the Court reconsider two aspects of its July 30, 2026 Opinion and Judgment ("Opinion").

**1.** The Court should amend Part II.C of the Opinion ("Overbreadth") to remand the case. As the Court noted, the ordinary course of action "when a district court has used an improper legal standard in making a determination" is to "remand … to permit a decision under the appropriate standard." Slip Op. 18 (quoting *Liddell ex rel. Liddell v. Bd. of Educ.*, 967 F.2d 1241, 1244 (8th Cir. 1992)). The Court identified two reasons for concluding that remand was unnecessary, and Chief Judge Colloton's opinion concurring in the judgment identified a third. The full record and procedural history of this case warrant remand to the district court, not a departure from the ordinary rule.

First, the Court cited *Josephine Havlak Photographer, Inc. v. Village of Twin Oaks*, 864 F.3d 905, 912 (8th Cir. 2017), which held that "[i]t is inappropriate to entertain a facial overbreadth challenge when the plaintiff fails to adduce any evidence that third parties will be affected in any manner differently from herself." Slip Op. 19. The Court asserted that Plaintiffs did not adduce any such evidence. *Id.* But Defendants did not cite *Josephine Havlak* or this proposition to this Court. If they had, Plaintiffs would have squarely addressed *Josephine Havlak* and explained how the evidence in the summary judgment record satisfied it.



Appellate Case: 25-1146 Page: 5 Date Filed: 08/27/2026 Entry ID: 5677326

Second, the Court found remand unnecessary because it could not "determine § 1's 'full set of applications' from the evidentiary record." Slip Op. 19 (quoting *Moody v. NetChoice*, 603 U.S. 707, 718 (2024)). But *NetChoice* was decided after the summary judgment record closed in this case, so Plaintiffs never had a reason or opportunity to reopen the record to allow them to more precisely define § 1's full set of applications. The Court should follow the same course as *NetChoice* itself and "remand the case[] for further proceedings" to conduct this analysis, 603 U.S. at 745, rather than foreclose it on the basis of a legal rule that did not exist at the time of discovery and summary judgment briefing.

Third, Chief Judge Colloton's concurring opinion concluded that Plaintiffs' overbreadth claim must fail because "third-party library patrons have no constitutional right to receive unfettered access to books of their choice at taxpayer expense." Slip Op. 23. But even assuming *arguendo* that that proposition is accurate and relevant to § 1's enforcement against librarians at public libraries, it is inapplicable to booksellers and publishers.

The Court should therefore amend the Opinion to remand to the district court for further proceedings on Plaintiffs' overbreadth claim.

**2.** Part II.D ("Vagueness") describes § 1's meaning in two contradictory ways. It says that a person violates § 1 only if they "knowingly furnish[] an item to a minor knowing of the item's harmful character," Slip Op. 22, and defines "furnish"

to mean "[t]o provide or supply *with* (something necessary, useful, or desirable, either material or immaterial)," *id.* at 21 (quoting Oxford Eng. Dictionary ("OED") (June 2026), https://doi.org/10.1093/OED/5667964040) (emphasis supplied). But it also states that "Plaintiffs obviously fall within the statute's ambit when they *shelve*, check out, and sell books." *Id.* at 21 (emphasis added).

The Opinion thus leaves Plaintiffs and others who must conform their conduct to § 1 with substantial confusion: do they violate § 1 only when they knowingly furnish to a minor material that is statutorily harmful to minors, or any time they shelve such material? This ambiguity is exactly what the vagueness doctrine exists to prevent. *See, e.g.*, *Interstate Circuit, Inc. v. City of Dallas*, 390 U.S. 676, 689 (1968) ("It is essential that legislation aimed at protecting children from allegedly harmful expression … be clearly drawn and that the standards adopted be reasonably precise so that those who are governed by the law and those that administer it will understand its meaning and application.").

The Court should revise Part II.D to avoid this ambiguity by adopting Defendants' limiting construction of § 1, under which shelving a book is *not* enough to violate the statute. *See, e.g.*, Appellants' Br. 52 ("[T]he crime requires a targeted action towards a minor, not an inadvertent or untargeted action (such as shelving a book in the general fiction section)."). This is consistent with the Court's central

interpretation that § 1 requires "knowingly furnish[ing] an item to a minor knowing of the item's harmful character." Slip Op. 22.

The Court should also delete or modify the sentence asserting that one or more unspecified Plaintiffs are "engag[ing] in some conduct that is clearly proscribed." Slip Op. 22 (quoting *Village of Hoffman Estates v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 495 (1982)). Plaintiffs never conceded this and Defendants never asserted it; to the contrary, Defendants argued that Plaintiffs had *not* "show[n] that their intended course of conduct was arguably proscribed." Appellants' Br. 8.

## BACKGROUND[1]

This petition concerns only § 1 of Act 372. As relevant here, "[a] person commits furnishing a harmful item to a minor if, knowing the character of the item involved, the person knowingly … [f]urnishes, presents, provides, makes available, gives, lends, shows, advertises, or distributes to a minor an item that is harmful to minors … ." Ark. Code Ann. § 5-27-212(b) & (b)(1).

Plaintiffs include libraries, librarians, and associations thereof; booksellers and associations thereof; individuals suing based on their interests as library patrons; and associations of authors and publishers. The district court issued a preliminary injunction and denied Defendants' motion to dismiss on July 29, 2023. Suppl. App.

---

[1] For additional background, *see generally* Appellees' Br. 6-13.

1-49, R. Doc. 53; R. Doc. 52. The parties then conducted discovery and filed dueling motions for summary judgment on May 15, 2024. App. 127-130, R. Doc. 93; App. 356-363, R. Doc. 99. Summary judgment briefing concluded on June 21, 2024. R. Doc. 117, 119.

On July 1, 2024, the Supreme Court handed down its opinion in *NetChoice*. Defendants subsequently filed notices of this Court's opinions in *L.H. v. Independence School District*, 111 F.4th 886 (8th Cir. 2024), and *GLBT Youth in Iowa Schools Task Force v. Reynolds*, 114 F.4th 660 (8th Cir. 2024), arguing that those opinions affected the district court's analysis of this case. R. Doc. 120, 121. Plaintiffs responded to both of those notices. R. Doc. 122, 123. But Defendants never filed a similar notice regarding *NetChoice*. Nor did the district court request further briefing regarding *NetChoice*'s impact prior to granting summary judgment to Plaintiffs on December 23, 2024.

The district court found that § 1 was overbroad and vague. On appeal, this Court reversed on both grounds.

First, the Court held that "[t]he district court's overbreadth analysis is patently deficient, as it never attempted to determine § 1's 'full set of applications, evaluate which are constitutional and which are not, and compare the one to the other.'" Slip Op. 16 (quoting *NetChoice*, 603 U.S. at 718).



Appellate Case: 25-1146 Page: 9 Date Filed: 08/27/2026 Entry ID: 5677326

The Court then held that the ordinary practice of "remand[ing] … to permit a decision under the appropriate standard" was unnecessary because Plaintiffs' overbreadth challenge would fail "if the appropriate standard is applied." *Id.* at 18-19 (quoting *Liddell*, 967 F.2d at 1244). The Court provided two independent reasons for this conclusion. First, Plaintiffs purportedly "did not 'adduce any evidence … that third parties will be affected in any manner differently from [themselves].'" *Id.* at 19 (quoting *Josephine Havlak*, 864 F.3d at 912). Second, the Court "cannot determine § 1's 'full set of applications' from the evidentiary record [Plaintiffs] put forward." *Id.* (quoting *NetChoice*, 603 U.S. at 718).

Chief Judge Colloton concurred in the judgment. He disagreed with the majority's basis for concluding that remand was unnecessary on Plaintiffs' overbreadth claim. Slip Op. 23 (Colloton, C.J., concurring). Nevertheless, he agreed that remand was unnecessary, concluding that Plaintiffs' overbreadth claim must fail because "third-party library patrons have no constitutional right to receive unfettered access to books of their choice at taxpayer expense." *Id.*

Second, the Court concluded that § 1 was not vague. It held that "§ 1's dual scienter requirements … limit its application to situations when a person knowingly *furnishes* an item to a minor knowing of the item's harmful character." *Id.* at 22 (emphasis added). And it explained that "furnish" means "[t]o provide or supply *with* (something necessary, useful, or desirable, either material or immaterial)." *Id.*



Appellate Case: 25-1146 Page: 10 Date Filed: 08/27/2026 Entry ID: 5677326

at 21 (quoting *Furnish* (v.), OED) (emphasis supplied). But it also stated that under the "common meanings of § 1's terms, Plaintiffs obviously fall within the statute's ambit when they shelve, check out, and sell books." Slip Op. 21.

## ARGUMENT

### I. The Court Should Revise Part II.C to Remand to the District Court

"When an appellate court discerns that a district court has failed to make a finding because of an erroneous view of the law, the usual rule is that there should be a remand for further proceedings to permit the trial court to make the missing findings." *Pullman-Standard v. Swint*, 456 U.S. 273, 291 (1982); *accord* Slip Op. 18. In overbreadth cases in particular, "these are fact-intensive questions that must be answered by the district court in the first instance," making remand the usual approach. *NetChoice, L.L.C. v. Paxton* ("*NetChoice II*"), 121 F.4th 494, 497 (5th Cir. 2024) (on remand from the Supreme Court, remanding to the district court). An appellate court may forgo remand only if "the record permits only one resolution of the factual issue." *Pullman-Standard*, 456 U.S. at 292; *see also Letterman v. Does*, 789 F.3d 856, 864 (8th Cir. 2015) ("[W]e do not weigh evidence on appeal.").

None of the three reasons cited in the majority or concurring opinions warrants a different course of action.

**1.** The Court held that Plaintiffs "fail[ed] to adduce any evidence that third parties will be affected in any manner differently from [themselves]" and therefore

could not succeed on remand. Slip Op. 19 (quoting *Josephine Havlak*, 864 F.3d at 912). Defendants did not cite *Josephine Havlak* or this rule in their appellate briefing, and neither the parties nor the Court raised it at argument. The "party-presentation principle" prohibits a court from ruling based on a claim that a party "never asserted and that [its adversary] never had the chance to address." *Clark v. Sweeney*, 607 U.S. 7, 9 (2025); *see also, e.g.*, *Thomas v. Payne*, 977 F.3d 697, 697 (8th Cir. 2020) (Colloton, J., dissenting from denial of rehearing en banc) (because Plaintiffs "did not have fair notice that the issue was 'in play,'" they "had no reason to address the point in [their] brief").

Had Defendants raised this issue, Plaintiffs would have explained the various ways that the record showed a different effect on third parties. For example, they introduced evidence not just about themselves and others like them, but about teenage staff and volunteers who would likely lose their jobs at libraries if § 1 took effect. App. 411-12, R. Doc. 99-5 at 3-4; App. 425-6, R. Doc. 99-6 at 3-4; App. 550-1, R. Doc. 99-17 at 6-7. These older minors will lose jobs and work experience because § 1 prohibits them from having access to books constitutionally protected for them but inappropriate for younger minors.

Plaintiffs adduced evidence about other effects as well. For example, they showed that parents could be prosecuted for giving a book from their own collection to a minor child. *See, e.g.*, Add. 7 n.3; App. 1104; R. Doc. 126, at 7 n.3. This is not

in dispute; Defendants explicitly agreed that § 1 applies to parents. *See* Appellees' Br. 43; Appellants' Reply Br. 29. Plaintiffs also introduced evidence about the burden on parents of small children who browse books in libraries and bookstores. App. 396, R. Doc. 99-3 at 5; App. 402, R. Doc. 99-4 at 6; App. 522, R. Doc. 99-11 at 1; App. 658, R. Doc. 99-18 at 1.

Whether these applications are unconstitutional and substantial enough to outweigh the statute's constitutional sweep raise "fact-intensive questions that must be answered by the district court in the first instance." *NetChoice II*, 121 F.4th at 497. They should therefore be weighed by the district court in the first instance. *Id.*

In remanding, the Court should amend its discussion of *Josephine Havlak* to simply direct the district court to consider its application. *Josephine Havlak* involved a single plaintiff challenging the application of an ordinance to her own singular activity. 864 F.3d at 912. The plaintiff identified *no* allegedly unconstitutional applications beyond that single application, so the Court concluded that she could only bring an as-applied challenge. *Id.* The Court did not state that if differently situated Plaintiffs with multiple injuries join together to file a single lawsuit, they must identify *yet more* types of injured parties. The Supreme Court has explicitly rejected such a rule, which would produce "absurd results." *Board of Trustees of St. Univ. of N.Y. v. Fox*, 492 U.S. 469, 484 (1989). For example, *Virginia v. Am. Booksellers Ass'n, Inc.* allowed booksellers to proceed based on the alleged

"infringement of the First Amendment rights of bookbuyers." 484 U.S. 383, 393 (1988). They would not have lost that ability if a bookbuyer had joined as a plaintiff—but that is what the Opinion's summary of *Josephine Havlak* suggests. In any event, because Plaintiffs *did* satisfy *Josephine Havlak* as interpreted by the Court, there is no need to definitively resolve its application to a case like this.

**2.** The Court next found remand unnecessary because it "cannot determine § 1's 'full set of applications' from the evidentiary record [Plaintiffs] put forward," as required by *NetChoice*. Slip Op. 19 (quoting *NetChoice*, 603 U.S. at 718). But *NetChoice* itself did not reverse the lower courts when it found the record was insufficient to make that determination; it "remand[ed] the cases for further proceedings." 603 U.S. at 745; *accord NetChoice II*, 121 F.4th at 497.

The summary judgment record in this case closed before the Supreme Court handed down *NetChoice*, as did fact discovery. *See supra* p. 9. Because no court before *NetChoice* had suggested that a record needs to precisely define the full set of applications of a challenged statute, neither party sought to do so during discovery. Nor did either party suggest during summary judgment briefing that that standard applied. *See, e.g.*, *Brief in Support of Prosecuting Attorneys' Motion for Summary Judgment*, R. Doc. 95. Nor did Defendants file a notice of supplemental authority about *NetChoice* arguing that it changed the analysis or foreclosed Plaintiffs' claim. *See supra* p. 9.



Appellate Case: 25-1146 Page: 14 Date Filed: 08/27/2026 Entry ID: 5677326

If *NetChoice* changed the law after the close of evidence, the appropriate course of action is to remand to resume district court proceedings under the appropriate standard, including discovery if needed. *See, e.g.*, *NetChoice II*, 121 F.4th at 497. For example, Plaintiffs served interrogatories asking Defendants to state whether specific books were "'harmful to minors' within the meaning of Section 1." App. 1073-1074; R. Doc. 99-5 at 4-5. Defendants refused to respond. *Id.*[2] If *NetChoice* changed the law so that Plaintiffs need to define the full set of applications at a more granular or comprehensive level, they should have the opportunity to get answers to questions that did not previously need answering. *See, e.g.*, *NetChoice II*, 121 F.4th at 497.[3] Moreover, the parties did not submit the full

---

[2] To the extent that Defendants assert that this is a "new argument" that should not be considered in a petition for rehearing, *see, e.g.*, *United States v. Replogle*, 678 F.3d 940, 942 (8th Cir. 2012), Plaintiffs note that Defendants never argued that the "usual rule" of remand, *Pullman-Standard*, 456 U.S. at 291 should be set aside. Plaintiffs therefore had no reason to burden the Court with the entire procedural history or record.

[3] As Chief Judge Colloton suggests, it is unlikely that *NetChoice* intended its novel phrase to "require[] libraries in this sort of case to itemize their entire catalogs for the court." Slip Op. 23 (Colloton, C.J., concurring in the judgment). In *NetChoice*, the parties focused only on social media feeds, even though the challenged regulation also applied to services as diverse as email providers, online marketplaces, payment services, and ride-sharing services. 603 U.S. at 724-25. In that context, the familiar overbreadth analysis of whether "a substantial number of [the law's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep," could not be conducted without evidence regarding those varied and complex types of applications. *Id.* at 723 (citation omitted). *NetChoice* did not state the level of particularity with which parties must outline all possible applications, much less in a case like this that does not concern such disparate

2,824-page record to this Court; even without further discovery, the task of applying the correct legal standard to that full record is one that is better conducted by the district court in the first instance. *See Pullman-Standard*, 456 U.S. at 291-92.

**3.** Chief Judge Colloton proposed a third reason for forgoing remand: that "third-party library patrons have no constitutional right to receive unfettered access to books of their choice at taxpayer expense." Slip Op. 23 (Colloton, C.J., concurring in the judgment). The parties briefed that proposition in relation to § 5, but Defendants have never suggested that it is relevant to § 1. *See, e.g.*, Appellants' Br. 28-41; Appellants' Reply Br. 15-17. Even assuming *arguendo* that patrons of public libraries (as opposed to school libraries) lack relevant First Amendment rights, it is not clear that that would dispose of *librarians'* constitutional right to be free from *criminal* liability for protected speech.

But this rationale cannot justify forgoing remand for a more basic reason: § 1 applies to booksellers, parents in their own homes, and publishers and authors—not just librarians. "[T]he First Amendment rights of bookbuyers" in this context are indisputable. *Am. Booksellers*, 484 U.S. at 393. So too is the right of parents to direct their children's upbringing and education. *See Troxel v. Granville*, 530 U.S. 57, 66 (2000); *see also* Appellees' Br. 36. And publishers and authors have interests distinct

---

applications. *See also* Appellees' Br. 39. Whether the evidence sheds sufficient light on all types of applications will be better evaluated by the fact-finder in the first instance.



Appellate Case: 25-1146 Page: 16 Date Filed: 08/27/2026 Entry ID: 5677326

from library patrons. *See Penguin Random House, LLC v. Robbins*, 172 F.4th 581, 586 (8th Cir. 2026) (noting the "interests" of "publishers' and authors' right to communicate with their intended audience").

Even if one were to assume that every application of § 1's criminal penalties to librarians is constitutional because library patrons lack a relevant First Amendment right, the question would remain whether § 1's application to booksellers, publishers, and parents is unconstitutional, and whether those applications are substantial "in relation to the statute's plainly legitimate sweep." *NetChoice*, 603 U.S. at 723 (citation omitted). That is a question for the district court in the first instance. *See, e.g.*, *Pullman-Standard*, 456 U.S. at 291-92; *NetChoice II*, 121 F.4th at 497.

## II. The Court Should Revise Part II.D to Eliminate Ambiguity

The district court found § 1 unconstitutionally vague because its "use of 'present,' 'make[] available,' and 'show' leaves librarians and booksellers unsure about whether shelving books they know contain sexual content may subject them to criminal liability." Add. 22; App. 1119; R. Doc. 126, at 22. On appeal, Defendants argued that the district court misinterpreted § 1, arguing that it is not vague because "the crime requires a targeted action towards a minor, not an inadvertent or untargeted action (such as shelving a book in the general fiction section)." Appellants' Br. 52. Defendants specifically rejected the notion that § 1 requires



Appellate Case: 25-1146 Page: 17 Date Filed: 08/27/2026 Entry ID: 5677326

"librarians and booksellers to 'shelve only books fit for young children and segregate' the rest in a special adults-only section." *Id.* at 54. To defend § 1 from both overbreadth and vagueness concerns, Defendants repeatedly rejected "shelving" liability, even saying that that broad interpretation "violat[es] several statutory-interpretation principles." Appellants' Reply Br. 25.[4]

In rejecting Plaintiffs' vagueness argument, the Opinion largely adopts Defendants' interpretation of § 1. As Defendants urged, the Court held "that § 1's dual scienter requirements … limit its application to situations when a person knowingly *furnishes* an item to a minor knowing of the item's harmful character." Slip Op. 22 (emphasis added). It explained that "furnish" means "[t]o provide or supply *with* (something necessary, useful, or desirable, either material or immaterial)." *Id.* at 21 (quoting OED) (emphasis supplied). The bulk of Part II.D thus matches Defendants' argument that "the crime requires a targeted action

[4] *See also* Appellants' Br. 54 (the district court erred in interpreting § 1 "broadly as requiring librarians and booksellers to 'shelve only books fit for young children and segregate' the rest in a special adults-only section" (quoting Add. 13-21; App. 1110-18; R. Doc. 126, at 13-21); *id.* at 53 (arguing that § 1 should be sustained because it was "similar" to a provision that the Arkansas Supreme Court had held was not violated by "[s]imply shelving and displaying 'harmful' materials." (quoting *Shipley*, 195 S.W.3d at 919)); Appellants' Reply Br. 23 (contrasting § 1 with prior provision found unconstitutional because it made it unlawful "if 'material harmful to minors' is shelved on a bookshelf, even without some other effort made to draw attention to it." (quoting *Shipley*, 195 S.W. at 918)).



Appellate Case: 25-1146 Page: 18 Date Filed: 08/27/2026 Entry ID: 5677326

towards a minor, not an inadvertent or untargeted action (such as shelving a book in the general fiction section)." Appellants' Br. 52.

However, Part II.D also contains one sentence that suggests otherwise. After providing dictionary definitions for many of § 1's terms, the Court says: "Given these common meanings of § 1's terms, Plaintiffs obviously fall within the statute's ambit when they *shelve*, check out, and sell books." Slip Op. 21 (emphasis added).

As Defendants acknowledged, this interpretation would cause more profound constitutional concerns. *See, e.g.*, Appellants' Reply Br. 23 (recognizing that a prior statute was struck down because it "'ma[d]e it unlawful to 'display material which is harmful to minors in such a way that minors, as part of the invited general public, will be exposed to view such material,' so that it was unlawful 'if 'material harmful to minors is shelved on a bookshelf, even without some other effort made to draw attention to it.'" (quoting *Shipley*, 195 S.W.3d at 914, 918)).

The "shelving" sentence thus introduces the very ambiguity that the rest of Part II.D would otherwise eliminate. To eliminate this ambiguity and ensure that the Opinion does not "raise[] a host of questions" about how to comply, *City of Chicago v. Morales*, 527 U.S. 41, 59 (1999), Plaintiffs respectfully urge the Court to amend the Opinion to delete or modify this sentence.

Plaintiffs also request that the Court delete its suggestion that one or more Plaintiffs are "plainly" "engag[ing] in some conduct that is clearly proscribed." Slip

Op. 22 (quoting *Village of Hoffman Estates.*, 455 U.S. at 495). Plaintiffs never conceded this and Defendants never tried to establish it; nobody has ever asserted that any Plaintiff or Plaintiffs' member is "knowingly furnish[ing] an item to a minor knowing of the item's harmful character." Slip Op. 22. Indeed, Defendants repeatedly argued that Plaintiffs had *not* "show[n] that their desired conduct is arguably proscribed." Appellants' Reply Br. 7; *see also, e.g.*, Appellants' Br. 8 ("Plaintiffs' speculative evidence failed to show that their intended course of conduct was arguably proscribed … ."); *id.* at 57 (describing prosecution of Plaintiffs' conduct as "fanciful"). Plaintiffs thus respectfully request that that sentence be omitted.

**CONCLUSION**

Plaintiffs respectfully ask the Court to grant rehearing and modify the Opinion.

## CERTIFICATE OF COMPLIANCE

I certify that this motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because it contains 3,894 words, excluding the parts exempted by Fed. R. App. P. 32(f).

Pursuant to Fed. R. App. P. 27(d)(1)(E), I also certify that this motion complies with the requirements of Fed. R. App. P. 32(a)(5)-(6) because it has been prepared in a 14-point Times New Roman, a proportionally spaced typeface, using Microsoft Word.

This document has been scanned for viruses and is virus-free.

Dated: August 27, 2026

*/s/ John T. Adams*
John T. Adams

## CERTIFICATE OF SERVICE

I hereby certify that on August 27, 2026, I electronically filed the foregoing Petition for Panel Rehearing with the Clerk of the Court of the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ John T. Adams*
John T. Adams



Appellate Case: 25-1146 Page: 22 Date Filed: 08/27/2026 Entry ID: 5677326