Nos. 25-1146, 25-2211

**UNITED STATES COURT OF APPEALS**
**FOR THE EIGHTH CIRCUIT**

FAYETTEVILLE PUBLIC LIBRARY,
a political subdivision in the City of Fayetteville, *et al.*,
*Plaintiffs-Appellees,*

HAYDEN KIRBY,
*Plaintiff*,

LETA CAPLINGER, *et al.*,
*Plaintiffs-Appellees,*

v.

CRAWFORD COUNTY, ARKANSAS, *et al.,*
*Defendants,*

TODD MURRAY, each in his or her official capacity as a prosecuting attorney for the State of Arkansas, *et al.,*
*Defendants-Appellants,*

TIM GRIFFIN, in his official capacity as Attorney General of Arkansas,
*Intervenor-Defendant-Appellant.*

On Appeal from the United States District Court
for the Western District of Arkansas
No. 5:23-cv-05086 (Hon. Timothy L. Brooks)

# Response to Petition for Panel Rehearing


OFFICE OF THE ARKANSAS
ATTORNEY GENERAL
101 West Capitol Avenue
Little Rock, AR 72201
(501) 682-2700
autumn.patterson@arkansasag.gov

TIM GRIFFIN
Arkansas Attorney General
AUTUMN HAMIT PATTERSON
Solicitor General

*Counsel for Defendants-Appellants & Intervenor-Defendant-Appellant*

## TABLE OF CONTENTS

Table of Contents ........................................................................ i

Table of Authorities ...................................................................... ii

Introduction ................................................................................ 1

Background ................................................................................. 3

Argument .................................................................................... 4

I. Plaintiffs' Remand Requests Are Baseless ...................................... 4

A. Plaintiffs' Argument Based on *NetChoice*'s Timing Is Foreclosed and Meritless ........................................... 4

B. Plaintiffs' Argument Based on Third-Party Impacts Is Meritless ........................................................ 16

II. Revisions to the Court's Vagueness Analysis Are Unnecessary and, if Made, Should Be Narrow ............................. 18

Conclusion ................................................................................. 20

Certificate of Compliance .............................................................. 22

Certificate of Service .................................................................... 23



Appellate Case: 25-1146 Page: 2 Date Filed: 10/13/2026 Entry ID: 5694171

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Christopherson v. Bushner*,
34 F.4th 1123 (8th Cir. 2022) (per curiam) .......... 8

*Crown Cork & Seal Co. v. Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO*,
501 F.3d 912 (8th Cir. 2007) .......... 11, 18

*A.J. ex rel. Dixon v. Tanksley*,
822 F.3d 437 (8th Cir. 2016) .......... 12

*Eagle Tech. v. Expander Ams., Inc.*,
783 F.3d 1131 (8th Cir. 2015) .......... 6, 7

*Est. of Thomson v. Toyota Motor Corp. Worldwide*,
545 F.3d 357 (6th Cir. 2008) .......... 7

*GLBT Youth in Iowa Schs. Task Force v. Reynolds*,
114 F.4th 660 (8th Cir. 2024) .......... 5, 11

*Jensen v. Minn. Bd. of Med. Prac.*,
No. 25-1812, 2026 WL 2716496 (8th Cir. Sept. 15, 2026) .......... 16

*Josephine Havlak Photographer, Inc. v. Vill. of Twin Oaks*,
864 F.3d 905 (8th Cir. 2017) .......... 17

*Mirabelli v. Bonta*,
607 U.S. 492 (2026) .......... 17

*Moody v. NetChoice, LLC*,
603 U.S. 707 (2024) .......... 1-2, 4-6, 8-13

*Murthy v. Missouri*,
603 U.S. 43 (2024) .......... 12

*NetChoice, LLC v. Bonta*,
170 F.4th 744 (9th Cir. 2026) .......... 13

*New Hampshire v. Maine*,
532 U.S. 742 (2001) ... 6

*Oil & Gas Transfer L.L.C. v. Karr*,
928 F.3d 1120 (8th Cir. 2019) ... 10

*Philip v. Ford Motor Co.*,
328 F.3d 1020 (8th Cir. 2003) ... 6

*Pullman-Standard v. Swint*,
456 U.S. 273 (1982) ... 9, 10

*United States v. Am. Libr. Ass'n*,
539 U.S. 194 (2003) ... 15

*United States v. Goings*,
200 F.3d 539 (8th Cir. 2000) ... 12, 18

*United States v. Hansen*,
599 U.S. 762 (2023) ... 2, 14

*United States v. McCoy*,
496 F.3d 853 (8th Cir. 2007) ... 7, 8

*United States v. Moody*,
132 F.3d 34 (6th Cir. 1997) ... 12

*United States v. Replogle*,
678 F.3d 940 (8th Cir. 2012) ... 1, 7

*United States v. Williams*,
553 U.S. 285 (2008) ... 15

*Webb v. Lakey*,
111 F.4th 939 (8th Cir. 2024) ... 11

**Rules & Statutes**

Ark. Code Ann. § 5-27-212 ... 14

8th Cir. R. 30A ... 12



Appellate Case: 25-1146 Page: 4 Date Filed: 10/13/2026 Entry ID: 5694171

Fed. R. App. P. 30 ........................................................................ 12

**Other Authorities**

Val Giordano, *How Many Books Are In The World?* ISBNDB, https://tinyurl.com/3bn9wxj7 ............................................ 14

## INTRODUCTION

For the first time, Plaintiffs argue that, because *Moody v. NetChoice, LLC*, 603 U.S. 707 (2024), was decided while summary-judgment motions were pending, a remand is necessary so they can potentially develop additional evidence and the district court can re-analyze whether Act 372 facially violates the First Amendment. But "[p]anel rehearing is not a vehicle for presenting new arguments," and this Court should not "consider arguments raised for the first time in a petition for rehearing." *United States v. Replogle*, 678 F.3d 940, 942 (8th Cir. 2012).

Regardless, Plaintiffs' remand arguments are meritless, including because they mischaracterize the record. Plaintiffs knew the heightened evidentiary burden for facial challenges. In summary-judgment briefing, Defendants argued, relying on cases pre-dating *NetChoice*, that facial challenges require showing a law's unconstitutional applications outweigh its plainly legitimate sweep. *See, e.g.*, R. Doc. 97, at 7-8 (emphasizing "[f]acial challenges are disfavored" and Plaintiffs have a heavy "burden to show they are entitled" to the "strong medicine" of declaring a law facially invalid (citations omitted)); *id.* at 15 ("must

show … overbreadth is 'both real and substantial in relation to its plainly legitimate sweep'" (citations omitted)); R. Doc. 107, at 14. Yet Plaintiffs didn't carry that burden. Indeed, even after *NetChoice*'s issuance and Defendants' notice of supplemental authority discussing an Eighth Circuit case applying the *NetChoice* standard, Plaintiffs insisted their evidentiary record was sufficient under *NetChoice*. R. Doc. 123, at 2-3.

Not only have Plaintiffs thus forfeited and waived their remand argument, but they also failed to show remand wouldn't be futile here. Plaintiffs don't commit to developing the record if given another chance and suggest the district court could rule for them "even without further discovery." Pet. 16. Plaintiffs shouldn't be allowed to urge the district court to "bypass[] the required inquiry" all over again, Slip Op. 16, or waste judicial and party resources when their legal arguments fail as a matter of law. Given the law's "plainly legitimate sweep," *id.* at 18, Plaintiffs cannot possibly make the required showing that any "realistic, not fanciful," unconstitutional applications are "substantially disproportionate." *United States v. Hansen*, 599 U.S. 762, 770 (2023).

Plaintiffs also request revisions to fix supposed ambiguities in two sentences of the Court's vagueness analysis. But the challenged sentences are clear in context. The rehearing petition should be denied.

## **BACKGROUND**

Arkansas enacted Act 372 to protect children from obscenity and increase accountability for public-library curation decisions. Appellants' Br. 3. Section 1 prohibits knowingly furnishing obscene materials to children, and § 5 requires libraries to adopt written policies concerning book curation and retention. *Id.* at 3-7. The district court held both provisions unconstitutional, and this Court reversed. Slip Op. 22. It concluded Plaintiffs' facial challenge to § 1 fails because Plaintiffs didn't develop a record of all § 1's applications, and because Plaintiffs didn't present evidence of third-party impacts. *See id.* at 19-20. Chief Judge Colloton separately concluded Plaintiffs' challenge fails because library patrons have no constitutional right to "unfettered access to books of their choice at taxpayer expense," so Plaintiffs cannot show that unlawful applications of the Act are substantial when compared to its plainly legitimate sweep. *Id.* at 23-24 (Colloton, C.J., concurring). Meanwhile, the Court unanimously concluded that § 1 isn't impermissibly vague, *id.*

at 20-22 (majority), and Plaintiffs lack standing to challenge § 5, *id.* at 12-14.

Plaintiffs now move for panel rehearing only regarding § 1. Plaintiffs request remand for the district court to re-do its facial analysis on their First Amendment claim and for Plaintiffs to conduct additional discovery "if needed." Pet. 15. Plaintiffs also request revisions to the vagueness analysis, but don't contest that § 1 isn't impermissibly vague. Pet. 17-20.

## ARGUMENT

## I. PLAINTIFFS' REMAND REQUESTS ARE BASELESS.

### A. Plaintiffs' Argument Based on *NetChoice*'s Timing Is Foreclosed and Meritless.

Plaintiffs' argument that this Court should remand, so they can potentially conduct additional discovery and the district court can re-attempt the facial analysis under *NetChoice,* is forfeited and waived. What's more, the argument is meritless, and any remand would be futile.

1. Plaintiffs' request to supplement the record is foreclosed by their failure to make it below. Plaintiffs complain that Defendants didn't file a notice specifically about *NetChoice*, suggest *NetChoice*'s standard wasn't raised below, and claim "Plaintiffs never had a reason or

opportunity to reopen the record to allow them to more precisely define § 1's full set of applications." Pet. 6; *see id.* at 9, 14. But that mischaracterizes the record and ignores the parties' and district court's discussion of *NetChoice*.

Defendants argued facial challenges require proof of disproportionate unconstitutional applications compared to the law's legitimate sweep even before *NetChoice*'s issuance. *See supra* 1-2. And after *NetChoice*'s issuance and while summary-judgment motions were still pending, Defendants filed a notice regarding *GLBT Youth in Iowa Schools Task Force v. Reynolds*, 114 F.4th 660 (8th Cir. 2024). That notice highlighted *GLBT Youth*'s reliance on *NetChoice* and how that district court was reversed for failing to "employ the proper analysis for facial challenges." R. Doc. 121, at 1. In response, Plaintiffs *themselves* cited *NetChoice*, acknowledging this Court reversed the *GLBT Youth* district court for failing to "perform the necessary inquiry set forth in *NetChoice*." R. Doc. 123, at 2-3.

Yet Plaintiffs made no attempt to supplement the record so the district court could assess [the law's] "full set of applications" based on *NetChoice*, 603 U.S. at 718—notwithstanding that district courts can

reopen discovery, *Philip v. Ford Motor Co.*, 328 F.3d 1020, 1024 (8th Cir. 2003). Plaintiffs instead insisted they had "presented evidence sufficient" to succeed on their facial challenge. R. Doc. 123, at 2-3. Plaintiffs didn't alternatively argue that, if the record was insufficient, they should be permitted to develop it further. Plaintiffs thus doubled down on their mistaken interpretation of § 1—a strategic choice that worked below. *Id.* at 3. After all, Plaintiffs persuaded the district court to rule in their favor under *NetChoice* based on inaccurate speculation that "classics of literature like *Romeo and Juliet*" would have to go into an age-gated adults-only section, Slip. Op. 17; R. Doc. 126, at 20, 37, even though (1) such literary classics fall outside § 1's obscenity definition, and (2) § 1 "requires a targeted action towards a minor," Appellants' Br. 52, 55. Because Plaintiffs declined to develop the necessary record and convinced the district court to "bypass[] the required inquiry entirely," Slip Op. 16, Plaintiffs' remand and additional-discovery arguments are forfeited, if not waived, and improper either way. *Cf., e.g.*, *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001).

Because "it is well settled that [this Court] will not consider an argument raised for the first time on appeal," *Eagle Tech. v. Expander*

*Ams., Inc.*, 783 F.3d 1131, 1138 (8th Cir. 2015), Plaintiffs forfeited their arguments by not raising them below. *See Est. of Thomson v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 363 (6th Cir. 2008) (rejecting "request [for] a remand for additional discovery" where plaintiff "did not request additional discovery in the district court"). And by affirmatively insisting the record was "sufficient" below rather than seeking supplementation, R. Doc. 123, at 2-3, Plaintiffs also waived their arguments, *see, e.g.*, *United States v. McCoy*, 496 F.3d 853, 856 (8th Cir. 2007).

2. Even if this Court overlooked Plaintiffs' forfeiture and waiver below, Plaintiffs' remand request and arguments would still be foreclosed by Plaintiffs' failure to make them until now. That's because "[p]anel rehearing is not a vehicle for presenting new arguments, and [this Court] do[es] not ordinarily consider arguments raised for the first time in a petition for rehearing." *Replogle*, 678 F.3d at 942. In their response brief, Plaintiffs never argued that, if this Court rejected their legal arguments regarding the facial-challenge standard, Plaintiffs should have another chance on remand.

Instead, Plaintiffs claimed they offered sufficient evidence (as they did before the district court) and defended the district court's reliance on fanciful hypotheticals about *Romeo and Juliet*. Appellees' Br. 38-40. And when pressed about the failure to analyze "all the applications" of the challenged laws, Plaintiffs insisted the district court's opinion didn't have "a *NetChoice* problem" and was adequate "under the *NetChoice* framework." Oral Arg. 20:00-21:30. Plaintiffs never requested a remand if the Court disagreed or argued the district court was unaware that it should apply *NetChoice* (because it wasn't, App. 1134, R. Doc. 126, at 37), so their arguments are forfeited. *See Christopherson v. Bushner*, 34 F.4th 1123, 1124 (8th Cir. 2022) (per curiam) (refusing to consider request to amend complaint first raised in a rehearing petition).

Tellingly, Plaintiffs requested a remand if this Court concluded certain Plaintiffs lacked standing. Appellees' Br. 23 n.4. This shows Plaintiffs didn't just forfeit their remand request; they waived it too. *See McCoy*, 496 F.3d at 856.

Apparently recognizing their petition impermissibly relies on new arguments, Plaintiffs imply their forfeiture and waiver should be excused. *See* Pet. 15 n.2. Plaintiffs say Defendants didn't argue *against*



Appellate Case: 25-1146 Page: 13 Date Filed: 10/13/2026 Entry ID: 5694171

remand, giving them "no reason to burden the Court with the entire procedural history or record." *Id.* But Plaintiffs ignore that Defendants expressly argued the "Court should *reverse*" the district court's judgment "and hold Act 372's Obscenity and Policy Provisions are constitutional." Appellants' Br. 64 (emphasis added).[1] Defendants weren't required to preemptively rebut potential arguments Plaintiffs could assert in response—and didn't—that remand, rather than reversal, would be appropriate if the Court rejected Plaintiffs' legal arguments about *NetChoice* and § 1's interpretation. There's no reason to overlook Plaintiffs' forfeiture and waiver.

3. In any event, Plaintiffs' remand request is meritless. Along with the *NetChoice* timing issue, Plaintiffs primarily rely on *Pullman-Standard v. Swint,* 456 U.S. 273, 291 (1982), to argue the "usual rule" is remand. Pet. 15. But the quoted language describes what happens after a bench trial: "the usual rule is that there should be a remand for further proceedings to permit the trial court to make the missing findings" when

---

[1] To the extent Plaintiffs are referring to Defendants' alternative argument, Defendants only argued that, if the Court disagreed with Defendants on the merits, it should remand for the district court to narrow the injunction's scope. *Id.* at 62-64.

it "has failed to make a finding because of an erroneous view of the law." *Pullman-Standard*, 456 U.S. at 291. That says nothing about what happens when a district court misapplies a legal standard at the summary-judgment stage and no fact-finding is required or appropriate. *See Oil & Gas Transfer L.L.C. v. Karr*, 928 F.3d 1120, 1124 (8th Cir. 2019) ("[F]ederal courts do not make findings of fact at the summary judgment stage.").

This Court didn't review or make any factual findings. Rather, the Court (correctly) held Plaintiffs' facial challenge failed as a legal matter because Plaintiffs didn't develop a record of § 1's "full set of applications." Slip Op. 19. Regardless, even if there were a factual issue, no remand is necessary here because the "record permits only one resolution of the factual issue." *Pullman-Standard*, 456 U.S. at 292. *Pullman-Standard* thus provides no support for Plaintiffs' remand argument.

Neither does *NetChoice*, even though the Supreme Court remanded that case to the Fifth Circuit, which then remanded to the district court. *See* Pet. 11, 14. As with *Pullman-Standard*, Plaintiffs ignore the differences between *NetChoice* and this case. *NetChoice* was at the preliminary-injunction stage, so the record was "underdeveloped" and the

case necessarily would continue below. 603 U.S. at 726. Plaintiffs here had a full opportunity to develop the record, and there was a final judgment for this Court to review without any expectation or need for further proceedings below. Moreover, the *NetChoice* lower courts didn't have the benefit of the Supreme Court's *NetChoice* opinion before it issued. In contrast, both *NetChoice* and *GLBT Youth* issued before the summary-judgment decision here; both parties discussed those cases, *see supra* 5; and the district court cited both cases, *see* App. 1132, R. Doc. 126, at 35 n.13; App. 1134, R. Doc. 126, at 37.

In short, Plaintiffs identify no analogous case showing remand is appropriate here, much less required. Nor do they cite a case showing that when plaintiffs, as here, fail to put forth necessary summary-judgment evidence, they should be given another chance to do so. To the contrary, that's when defendants are entitled to judgment in their favor. *See, e.g.*, *Webb v. Lakey*, 111 F.4th 939, 942 (8th Cir. 2024).

4. This Court should also reject Plaintiffs' remand request because any remand would be "inefficient and unnecessary," *Crown Cork & Seal Co. v. Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO*, 501 F.3d 912, 916 (8th Cir. 2007), and "an exercise in futility," *United States v.*

*Goings*, 200 F.3d 539, 544 (8th Cir. 2000). While Plaintiffs request remand for an "opportunity to reopen the record … to more precisely define § 1's full set of applications," Pet. 6, Plaintiffs don't commit to developing the record on remand. Indeed, they seemingly believe further discovery is unnecessary—even though they never "sought" to develop a record showing "the full set of applications." *Id.* at 14; *see id.* at 15 ("discovery *if needed*" (emphasis added)); *id.* at 16 (claiming the district court should be permitted to consider Plaintiffs' facial challenge again "even without further discovery").[2] This betrays that—without asking this Court to revisit it—Plaintiffs improperly resist the Court's

[2] Plaintiffs also argue the district court is better positioned to apply *NetChoice* because this Court didn't have the full "2,824-page record," by which Plaintiffs may be suggesting sufficient evidence is hidden in the existing record. Pet. 15-16. But that's meritless. First, this Court had the full record. Not only did Defendants "designate the entire district-court record as the record on appeal," Designation 1, but also the entire record was before the Court regardless, *see* 8th Cir. R. 30A(b)(4) ("this court may rely on any portion of the original record of the district court … including portions not included in the designated record"); *A.J. ex rel. Dixon v. Tanksley*, 822 F.3d 437, 444 n.6 (8th Cir. 2016) ("[p]arts of the record may be relied on by the court or the parties even though not included in the appendix" (quoting Fed. R. App. P. 30(a)(2)); *United States v. Moody*, 132 F.3d 34 (6th Cir. 1997). Second, it's Plaintiffs' burden to point to sufficient record evidence, not judges' to "hunt for truffles buried in the record." *Murthy v. Missouri*, 603 U.S. 43, 67 n.7 (2024) (citation modified). Plaintiffs haven't done so because the record doesn't contain evidence to prove their facial claims. *See infra* 13-18.

conclusion that *NetChoice* applies with full force. *See* Pet. 15 n.3. So rather than developing the record to "determine § 1's 'full set of applications,'" Slip Op. 19 (quoting *NetChoice*, 603 U.S. at 718), Plaintiffs' apparent plan is to encourage the district court to "bypass[] the required inquiry" a second time and conduct another "patently deficient" analysis. *Id.* at 16.

All Plaintiffs suggest they may do on remand—"if needed"—is resubmit interrogatories about whether 20 books are, in Defendants' judgment, "harmful to minors." Pet. 15. But Defendants properly objected to those interrogatories, App. 1073-74; R. Doc. 99-25, at 4-5, and Plaintiffs fail to explain how an answer would help them when they wisely never challenged the harmful-to-minor definition as overbroad or unlawful. *See* Appellants' Br. 3-4, 50-51 (explaining definition tracks obscenity definitions that survived constitutional challenges). And even assuming libraries have 20 books that are obscene to minors and that adults would need to go to a different section to access them, Plaintiffs would still fall short of satisfying their burden. *See NetChoice, LLC v. Bonta*, 170 F.4th 744, 758 (9th Cir. 2026) (record must permit the district court to consider "every conceivable application" of the facially challenged

law). Indeed, over 158 million unique books exist today, Val Giordano, *How Many Books Are In The World?*, ISBNDB, https://tinyurl.com/3bn9wxj7, raising questions about whether and how the Act applies to them and different methods of furnishing them—and the First Amendment implications of every such application. What's more, § 1 doesn't just apply to persons providing books in bookstores and libraries, but to all "person[s]," and applies to items beyond books, such as "picture[s]," "live performance[s]," and "film[s]." Ark. Code Ann. § 5-27-212(a)-(b).

Remand would also be futile because, even if Plaintiffs attempted to develop evidence beyond 20 books, Plaintiffs cannot possibly demonstrate the requisite "lopsided ratio" of unconstitutional applications to constitutional ones. Slip Op. 16 (quoting *Hansen,* 599 U.S. at 770). For example, as Chief Judge Colloton concluded, "library patrons have no constitutional right to receive unfettered access to books of their choice at taxpayer expense," *id.* at 23, so § 1 is necessarily constitutional in *all* applications concerning the public's access to library books. And even beyond libraries, § 1 is indisputably constitutionally applied when it prohibits persons from selling or giving children

magazines, books, pictures, and movies that are obscene as to them. *See, e.g.*, Appellants' Br. 56-58; Reply 29.

Furthermore, to the extent § 1 burdens adults' access to some materials that are obscene for children, but not adults, "the Constitution does not guarantee the right to acquire information … without any risk of embarrassment." *United States v. Am. Libr. Ass'n*, 539 U.S. 194, 209 (2003) (plurality). And § 1's application to materials that are obscene for adults is indisputably constitutional, because obscenity "is not protected by the First Amendment." *United States v. Williams*, 553 U.S. 285, 288 (2008). Meanwhile, while Plaintiffs invoke parental rights, *see* Pet. 16, they brought a facial First Amendment claim, not a parental-rights claim, and don't dispute Defendants' contention that there are constitutional applications as to parents. *See* Reply 29 ("surely parents are not constitutionally entitled to show graphic pornographic films with sadomasochistic abuse to their first graders"). Therefore, given § 1's "plainly legitimate sweep," Plaintiffs cannot possibly show the necessary "lopsided ratio", Slip Op. 16, 18, providing another reason why remand would be futile and improper.

### B. Plaintiffs' Argument Based on Third-Party Impacts Is Meritless.

Plaintiffs also request remand based on this Court's conclusion that they "fail[ed] to adduce any evidence that third parties will be affected [by § 1] in any manner differently from [Plaintiffs]." Slip Op. 19. Plaintiffs argue they did provide evidence, pointing to a few cites that supposedly reflect third-party effects. But the third-party impact inquiry focuses on the challenged law's effect on the "*speech* of third parties." *Id.* (emphasis added). *See Jensen v. Minn. Bd. of Med. Prac.*, No. 25-1812, 2026 WL 2716496, at *5 n.3 (8th Cir. Sept. 15, 2026) (deeming requirement satisfied based on impact on third-party "speech"). And the purported third-party effects Plaintiffs identify largely don't implicate the First Amendment and certainly don't alter Plaintiffs' inability to show § 1 has a "lopsided ratio." Slip Op. 16; *see supra* 13-15.

For instance, Plaintiffs claim children working at libraries may "lose jobs and work experience because § 1 prohibits them from having access to books" that are obscene for younger children. Pet. 12. But Plaintiffs' argument relies on their inaccurate § 1 interpretation, *see* Appellants' Br. 54 n.9; Reply 25, and alleges potential lost employment, not a speech infringement. In any event, Plaintiffs didn't prove the

libraries had books that would be obscene for older minors; indeed, they didn't introduce any books' content into the record at all. *See, e.g.*, Oral Arg. 5:15-30; *id.* 40:55-41:55.

Plaintiffs also complain that § 1 bars parents from showing children obscenity. But even assuming parents are constitutionally entitled to do so, *but see supra* 15, parental rights aren't grounded in the free-speech clause. *See Mirabelli v. Bonta*, 607 U.S. 492, 499 (2026) (Barrett, J., concurring). And while Plaintiffs speculate that § 1 may impact library and bookstore experiences of parents with young children, *see* Pet. 13, that speculation is predicated on their misreading of § 1 to require "segregat[ing]" covered books into age-gated "adults-only sections" where children are "prohibited from entering." App. 395-96, R. Doc. 99-3, at 4-5. Moreover, as Chief Judge Colloton explained, *see supra* 14, even if § 1 burdened parents' library experience, it wouldn't implicate the First Amendment. In sum, Plaintiffs lack requisite evidence of third-party effects (even though Defendants flagged the issue below and cited *Josephine Havlak Photographer, Inc. v. Village of Twin Oaks*, 864 F.3d 905 (8th Cir. 2017), R. Doc. 97, at 15) and, regardless, cannot show a lopsided ratio of unconstitutional applications, so any remand would be



Appellate Case: 25-1146 Page: 22 Date Filed: 10/13/2026 Entry ID: 5694171

"inefficient and unnecessary," *Crown Cork & Seal*, 501 F.3d at 916, and entirely "futil[e]," *Goings*, 200 F.3d at 544.

## II. REVISIONS TO THE COURT'S VAGUENESS ANALYSIS ARE UNNECESSARY AND, IF MADE, SHOULD BE NARROW.

Plaintiffs don't contest the Court's rejection of their vagueness claims, requesting only that two sentences of the Court's opinion be amended. *See* Pet. 17-20. But these sentences are clear in context and don't require amendment.

First, Plaintiffs object to the Court's conclusion that Plaintiffs may violate § 1 when they "shelve" obscene books. Pet. 19 (quoting Slip Op. 21). Although Plaintiffs contend Defendants argued against this conclusion, Defendants merely explained that § 1 prohibits "targeted action towards a minor," and doesn't bar, for instance, shelving books in the "general fiction section." Appellants' Br. 52. That doesn't mean the manner in which obscene books are shelved could *never* violate § 1, such as if a person purposely shelved obscene items to draw children's attention to them (*e.g.*, shelving pornographic magazines on a display in the children's section next to books like *Goodnight Moon*). The Court was thus correct to conclude that it's possible to violate the prohibition on furnishing a harmful item to a minor not only by loaning and selling an



Appellate Case: 25-1146 Page: 23 Date Filed: 10/13/2026 Entry ID: 5694171

item, but also by shelving it in certain circumstances. Slip Op. 21. But a person would have to "knowingly" furnish that item "to a minor knowing of the item's harmful character," *id.* at 22, so § 1 wouldn't apply when a person simply shelves a book in the general adult-fiction section under this Court's opinion. Accordingly, when read in context of the entire opinion, the "'shelving' sentence" introduces no ambiguity despite Plaintiffs' arguments. Pet. 19.

Second, Plaintiffs ask the Court to delete the sentence observing that Plaintiffs "engage[] in some conduct that is clearly proscribed." Slip Op. 22. In doing so, Plaintiffs largely rely on Defendants' argument that Plaintiffs hadn't "show[n] that their desired conduct is arguably proscribed to have a cognizable injury" because they didn't prove they possess materials "meet[ing] the harmful-to-minor definition." Reply 6-7. But the Court rejected Defendants' standing argument and Plaintiffs didn't challenge the obscenity definition as vague; instead, they only challenged "present," "make[] available," and "show." Slip Op. 21. Accordingly, assuming certain books Plaintiffs possess are obscene as Plaintiffs asserted, *id.* at 11, Plaintiffs would violate § 1 and "engage[] in



Appellate Case: 25-1146 Page: 24 Date Filed: 10/13/2026 Entry ID: 5694171

some conduct that is clearly proscribed" by, for instance, knowingly selling or checking out those books to children, *id.* at 21-22.

Alternatively, if the Court amends its opinion to address the purported ambiguities, it can simply delete the objected-to sentence on page 22 without otherwise altering its vagueness analysis—which Plaintiffs don't challenge. And the Court could make the following modification to the objected-to "'shelving' sentence," Pet. 19, to resolve its purported ambiguity: "Plaintiffs obviously fall within the statute's ambit when they [knowingly] shelve [materials that are harmful to minors in a manner that targets minors, or when they] check out, and sell [such materials to minors]." Slip. Op. 21.

## CONCLUSION

Plaintiffs' petition should be denied.



Appellate Case: 25-1146 Page: 25 Date Filed: 10/13/2026 Entry ID: 5694171

Respectfully submitted,

TIM GRIFFIN
Arkansas Attorney General

AUTUMN HAMIT PATTERSON
Solicitor General

OFFICE OF THE ARKANSAS
ATTORNEY GENERAL
101 West Capitol Avenue
Little Rock, Arkansas 72201
(501) 682-2007
autumn.patterson@arkansasag.gov

*Counsel for Defendants-Appellants*
*& Intervenor-Defendant-Appellant*

## Certificate of Compliance

I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 40(d) and the Court's order issued on September 25, 2026, because it contains 3,893 words, excluding the parts exempted by Fed. R. App. P. 32(f).

I also certify that this brief complies with the requirements of Fed. R. App. P. 32(a)(5)-(6) because it has been prepared in 14-point Century Schoolbook, using Microsoft Word.

I further certify that this PDF file was scanned for viruses, and no viruses were found on the file.

/s/ *Autumn Hamit Patterson*
Autumn Hamit Patterson



Appellate Case: 25-1146 Page: 27 Date Filed: 10/13/2026 Entry ID: 5694171

## CERTIFICATE OF SERVICE

I certify that on October 13, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to any CM/ECF participants.

/s/*Autumn Hamit Patterson*
Autumn Hamit Patterson



Appellate Case: 25-1146 Page: 28 Date Filed: 10/13/2026 Entry ID: 5694171